## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRUCE WASHINGTON, ET AL.**                          **CIVIL ACTION**

**VERSUS**                                                      **No. 22-632**

**RANDY SMITH, ET AL.**                                      **SECTION I**

### ORDER & REASONS

Before the Court is a motion[1] by plaintiffs Bruce Washington and Gregory Lane (collectively, "plaintiffs") for leave to file a third amended complaint. Defendants oppose[2] the motion. For the reasons that follow, the Court denies the motion.

## I.     BACKGROUND

Plaintiffs allege that police officers and other employees of the St. Tammany Parish Sheriff's Office ("STPSO") violated their constitutional rights during a traffic stop and plaintiffs' subsequent attempts to file a non-judicial complaint against the officers who conducted the stop.[3] In their second amended complaint, plaintiffs asserted seven causes of action.[4] This Court granted defendants' motion for judgment on the pleadings as to five of those causes of action.[5] The Court denied judgment on the pleadings as to Bruce Washington's ("Washington") claim of unlawful search

---

[1] R. Doc. No. 69.
[2] R. Doc. No. 78.
[3] The Court previously recounted the factual and legal circumstances of this case at length in its order and reasons granting in part and denying in part defendants' motion for judgment on the pleadings. R. Doc. No. 61.
[4] R. Doc. No. 29.
[5] R. Doc. No. 61.

against defendant Alexander Thomas ("Thomas"). Defendants did not move for judgment on the pleadings with regard to the seventh cause of action—a First Amendment petitions clause claim—as that claim was asserted against unidentified and unserved defendants ("Doe defendants") who allegedly violated plaintiffs' constitutional rights during their attempts to file a complaint with the STPSO.[6]

Plaintiffs now seek leave to amend their complaint to identify and name five defendants[7] previously referred to as the Doe defendants, and to "correct the addresses of the Exxon gas station and the St. Tammany Sheriff's Office locations where Plaintiffs attempted to file a non-judicial complaint, and clarify certain details pertaining to those attempts."[8] Defendants oppose the motion, arguing that the claim against the Doe defendants is prescribed, and that the proposed factual changes to the complaint do not warrant plaintiffs' admittedly untimely amendment.[9]

## II.    LEGAL STANDARDS

### a.  Untimely Amendment to Pleadings

Federal Rule of Civil Procedure 15(a) generally governs amendments to pleadings. However, "when, as here, a scheduling order has been issued, Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings after the scheduling

---

[6] *Id.* at 8 n.69.

[7] These defendants are John Evans, Dale Galloway, Christopher Graham, Emile Lubrano, and Jeremy Travis, all in their individual capacities. Two of these defendants, Emile Lubrano and Christopher Graham, were mentioned in the original complaint but not named as defendants. R. Doc. No. 29, ¶¶ 117–118. The proposed amended complaint also refers to other Doe defendants allegedly involved in the conduct at issue, but as yet unidentified. R. Doc. No. 69-4, ¶ 42.

[8] R. Doc. No. 69-1, at 1.

[9] R. Doc. No. 78.

order deadline has passed." *Henderson v. Atmos Energy*, 19-13072, 2020 WL 6131164, at *2 (E.D. La. Oct. 19, 2020) (Africk, J.) (quoting *Plains Cotton Coop. Assoc. v. Gray*, 672 F. App'x 372, 376 (5th Cir. 2016)). "While Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be 'freely' given, Rule 16(b)(4) limits modifications to a scheduling order to situations where good cause is shown." *Id.* (quoting *Plains Cotton Coop. Assoc.*, 672 F. App'x at 376–77). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Davis v. Karl*, No. 10-875, 2011 WL 13203134, at *1 (E.D. La. Feb. 2, 2011) (Africk, J.) (quoting *S&W Enters. LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

The Fifth Circuit has instructed that courts considering whether there is good cause to modify a scheduling order to allow untimely amendment of a complaint should consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters.,* 315 F.3d at 536 (cleaned up).

### b. Prescription

Though courts should "freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), "[i]t is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). An amendment is futile if it asserts a claim for which the prescriptive

period has already run. *Dalrymple v. U.S. Postal Serv.*, No. 18-14237, 2020 WL 1181845, at *7 (E.D. La. Mar. 12, 2020) (Vance, J.).

Plaintiffs assert their claims pursuant to 42 U.S.C. § 1983, which does not contain a statute of limitations. The statute of limitations for § 1983 claims is therefore governed by "the forum state's personal-injury limitations period, which in Louisiana is one year." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) (internal quotations and citation omitted). Federal law governs when a § 1983 claim accrues, and provides that "a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 421 (citing *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993)). "[T]he limitations period begins when the plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury." *Id.* (citing *Gartrell*, 981 F.2d at 257) (further citations omitted).

The tolling of the limitations period is likewise governed by state law. *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). Louisiana law provides that "[t]he interruption of prescription against one solidary obligor is effective against all solidary obligors and their successors." La. Civ. Code Ann. Art. 1799; *accord* La. Civ. Code Ann. Art 3503 ("When prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors.").

"An obligation is solidary for the obligees when it gives each obligee the right to demand the whole performance from the common obligor." La. Civ. Code Ann. Art 1790. "Solidary liability exists when the plaintiff shows "that each actor had a substantial role in bringing about the results of their actions" and their "actions

throughout the whole sequence of events are intertwined and interlocking." *Lawrence v. St. Bernard Police Dept.*, 99–3494, 2002 WL 31496374, at 4 (E.D. La. Nov. 6, 2002) (Duval, J.).

An obligation may be solidary though it derives from a different source for each obligor." La. Civ. Code Ann. Art. 1797. "[O]bligors are solidary when they are obligated to repair the same damage" and "are co-extensively liable for the same debt, regardless of how each party's debt arose." *P H I, Inc. v. Apical Inds. Inc.*, 946 F.3d 772, 777 n.11 (5th Cir. 2020) (citations omitted). By way of illustration, circumstances in which solidary liability may arise include "car accident tortfeasors and medical malpractice tortfeasors" whose combined acts resulted in an accident victim's death and "a check depositor and a depository bank . . . where their combined acts resulted in the improper deposit of a restrictively endorsed check, even though the depositor and bank engaged in 'separate acts of conversion.'" *Id.* (illustrating the concept of solidary obligors as applied in Louisiana law) (citations omitted).

"In the absence of a hearing on the issue of prescription, Louisiana courts decide the issue of solidarity by looking to whether the facts alleged by plaintiff, if accepted as true, are sufficient on their face to establish that the timely sued defendant and the untimely sued defendant are solidarily liable." *LeBlanc v. Andre*, No. 04-32, 2007 WL 9711046, at *3 (M.D. La. Feb. 28, 2007) (citing *Vincent v. Tush*, 618 So.2d 385 (La. 1993)).

"[W]hen interruption hinges on the status of joint tortfeasors, when no liability is found on the part of the timely sued tortfeasor, prescription will not be interrupted

as to the other joint tortfeasors not timely sued since no joint or solidary obligation exists." *Pastor v. Foti*, No. 00-2213, 2002 WL 550983, at *2 n.3 (E.D. La. Apr. 11, 2002) (McNamara, J.); *accord Gebhardt v. State*, 652 So.2d 150, 152 (La. Ct. App. 1995) ("[A]s long as the allegation of solidarity among the State and the other defendants remained viable, an exception of prescription was premature. However, if, after a trial on the merits, it turns out that under the facts proven by plaintiff there is no solidary liability because the timely filed defendant is not found liable to plaintiff at all, then the exception should be maintained at that time.").

### c. *Contra Non Valentem*

Because the Louisiana statue of limitations is borrowed in this § 1983 case, Louisiana's equitable tolling principles also apply. *See Green v. Doe*, 260 F. App'x 717, 720 (5th Cir. 2007) (citing *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir.1998)). "Louisiana's general rule for tolling is referred to as *contra non valentem*, under which a prescription is tolled or suspended when a plaintiff is 'effectually prevented from enforcing his rights for reasons external to his own will.'" *Bradley v. Sheriff's Dept. St. Landry Par.*, 958 F.3d 387, 394 (5th Cir. 2020) (quoting *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994)). *Contra non valentem* applies to prevent the running of a prescriptive period in four circumstances:

 (1) where there was some legal cause which prevented courts or their officers from taking cognizance of or acting on plaintiff's action; (2) where there was some condition coupled with contract or connected with proceedings which prevented [the] creditor from suing or acting; (3) where defendant himself has done some act effectually to prevent plaintiff from availing himself of his cause of action; and (4) where some cause of action is not known or reasonably knowable by plaintiff, even though his ignorance is not induced by defendant.

*Konie v. Louisiana*, No. 05-6310, 2011 WL 13359549, at *7 (E.D. La. Apr. 15, 2011) (Fallon, J.) (citations omitted). "The doctrine of *contra non valentem* creates a small opening, not a gaping hole, and so it only applies in exceptional circumstances." *Jones v. Evonik Corp.*, No. 22-1522, 2022 WL 3226755, at *4 (E.D. La. Aug. 10, 2022) (Africk, J.) (citations and quotations omitted).

The fourth circumstance, known as the discovery rule, "allows for extension of the prescriptive period where a plaintiff is unable to timely ascertain the identities of defendants." *Id.* (citing *Haynes v. Hunter*, 2007-0657 (La. App. 1 Cir. 12/21/07)). For *contra non valentem* to apply under this circumstance, "a plaintiff's ignorance of his cause of action cannot be attributable to his own willfulness or neglect; that is, a plaintiff is deemed to know what he could have learned through reasonable diligence." *Id.* (quotations and citation omitted).

The Fifth Circuit, applying Texas law, has held that a "strict application of limitations would be inequitable [when] the delay in determining the identity of" a John Doe defendant "is not attributable to" the plaintiffs, but rather to the district court's error in denying the plaintiff's request to conduct discovery. *Green*, 260 F. App'x at 719. The Fifth Circuit has also held, applying Louisiana law, that *contra non valentem* applied to toll the prescriptive period where a plaintiff, who was beaten by an unknown assailant, engaged in an "onerous and frustrating" search to identify the assailant, in which the assailant instructed witnesses not to identify him, and the plaintiff sought assistance from the city police department, district attorney, FBI,

7

former police officers, and private counsel. *Herdman v. Smith*, 707 F.2d 839, 841 (5th Cir. 1983).

In contrast, courts have determined that *contra non valentem* does not apply where a plaintiff has been less diligent in seeking the identity of a defendant. *E.g.*, *Konie*, 2011 WL 13359549, at *8 (finding the doctrine did not toll the prescriptive period where the plaintiff "sought discovery regarding [the defendant's] identity both before and after the prescriptive period, but did not file her motion to compel [relevant discovery] until almost a year after the prescriptive period" and "did not hire a private investigator until some time after filing the motion to compel"); *Walker v. Gusman*, No. 12–2521, 2015 WL 2354071, at *9 (E.D. La. May 15, 2015) (Lemmon, J.) (finding the doctrine did not apply when the plaintiff had previously identified proposed defendants as possible witnesses).

## III.    ANALYSIS

### a.  Plaintiffs' Untimely Amendment

Plaintiffs have already filed first[10] and second[11] amended complaints. The scheduling order in this matter provided that the deadline for amending pleadings was August 8, 2022.[12] Plaintiffs' motion is therefore clearly untimely, as both plaintiffs and defendants recognize.

Plaintiffs argue that there is good cause to modify the scheduling order and allow the untimely amendment. The Court considers plaintiffs' explanation for their

---

[10] R. Doc. No. 18.
[11] R. Doc. No. 29.
[12] R. Doc. No. 20, at 2.

untimeliness, the importance of their proposed amendments, the possibility of prejudice to defendants, and whether a continuance could cure any such prejudice. *S&W Enters.,* 315 F.3d at 536.

Plaintiffs explain their failure to timely move for leave to amend by pointing to defendants' conduct in discovery. They allege that "[d]efendant's deliberate obstruction during discovery and failure to conduct a reasonable inquiry prior to filing their [a]nswers" to the previous complaints delayed plaintiffs in ascertaining the identities of the Doe defendants.[13] Plaintiffs also accuse defense counsel of inappropriate deposition practices that further hindered discovery.[14] Defendants, in contrast, argue that plaintiffs' delay is attributable to their "fail[ure] to diligently pursue the identities of the" Doe defendants.[15] Defense counsel further asserts that plaintiffs' counsel's arguments are based on false and misleading factual statements.[16] In short, the parties' portrayals of one another's conduct in this matter differ drastically. The Court will attempt to set forth a balanced version of the relevant facts below.

---

[13] R. Doc. No. 69-1.

[14] R. Doc. No. 97, at 11. The United States Magistrate Judge assigned to this matter has ordered defense counsel to show cause why he should not be sanctioned for this deposition conduct. R. Doc. No. 116.

[15] *See generally* R. Doc. No. 78. Defense counsel's sur-reply memorandum also raises several issues that are irrelevant to the issue at hand. Defense counsel argues that plaintiffs' testimony contradicts allegations of racial prejudice raised in the complaint, *id.* at 10; that plaintiffs failed to obtain defendants' permission to conduct remote depositions, *id.* at 17; that plaintiffs' counsel is using the discovery process to train junior attorneys, id. at 18; and that plaintiffs' counsel is engaged in "virtue signaling," *id.* at 19. The Court takes no position on these issues.

[16] R. Doc. No. 110, at 7–8.

Plaintiffs sought to identify the Doe defendants both before and after they filed their original complaint on March 10, 2022.[17] Beginning in October 2021, they submitted multiple public records requests ("PRRs") for information about the traffic stop and any investigation of it, and corresponded with the STPSO about those requests through February of 2022.[18] However, plaintiffs apparently made no further efforts to identify the Doe defendants until August 2, 2022—six days before the scheduling order's deadline for amendments to pleadings[19]—when they sent written discovery requests to defendants.[20]

Plaintiffs' interrogatories included a request that defendants "identify each and every STPSO employee who you know or believe has information concerning any of the facts alleged in the complaint."[21] In response, defendants identified STPSO employees, including Lubrano and Graham, who were already referenced in the

---

[17] R. Doc. No. 1.

[18] R. Doc. Nos. 97-1, at 1 (PRR dated October 26, 2021 requesting information regarding "any investigation of the Washington Incident, including the results of the investigation and the identity of the officer(s) who conducted the investigation"), 97-6, at 2, 3 (PRR dated January 3, 2022, requesting the same information regarding "the Lane Incident" in addition to "records or discussion regarding a visit by Gregory Lane to the St. Tammany Parish Sheriff's Office on the day after [the traffic stop]" and "any subsequent attempts by Gregory Lane to file a complaint in the two-week period after [the traffic stop]"); 97-8, at 6–7 (email from plaintiffs' counsel to the sheriff's office dated February 3, 2022).

[19] R. Doc. No. 20, at 2 ("Amendments to pleadings, third-party actions, crossclaims, and counterclaims shall be filed no later than Monday, August 8, 2022.")

[20] R. Doc. No. 69-1, at 9; R. Doc. No. 78, at 13.

[21] R. Doc. No. 69-2, at 115.

complaint.[22] They did not identify any individuals of whom plaintiffs were not already aware.

On October 12, 2022, plaintiffs wrote to defendants to point out deficiencies in defendants' discovery responses. In particular, they pointed to defendants' failure to (1) identify "all persons present and/or on duty" at the sheriff's office when plaintiffs allegedly attempted to lodge a complaint, and (2) their failure to provide the "desk logs," or records officers on duty at the relevant STPSO offices, for the days on which plaintiffs were alleged to have contacted the office, despite having produced the desk logs for other days.[23]

On October 24, 2022, counsel for defendants told counsel for plaintiffs that he had "spoken with STPSO employees Jeremy Travis and Emile Lubrano, both of whom think they may have spoken with your client, but they do not have a very clear recollection of the conversation."[24] As discussed above, plaintiffs were already aware of Lubrano, but were not aware of Travis' potential involvement before this email. Plaintiffs requested to depose both Lubrano and Travis, and suggested additional avenues for identifying the Doe defendants.[25] On November 2, 2022, defendants identified John Evans for the first time, stating that plaintiffs "called and spoke with Capt. John Evans a day or two after" the traffic stop.[26]

---

[22] *Id.* The original complaint alleged that Lubrano instructed STPSO employees, including Graham, to return Washington's phone call regarding filing a complaint, R. Doc. No. 1 ¶¶ 18, 111, but that no employees did so. *Id.* ¶ 113.

[23] *Id.* at 132–33.

[24] *Id.* at 136.

[25] *Id.* at 149.

[26] *Id.* at 161.

Though plaintiffs assert that defendants still have not produced the desk logs for March 15, 2021, or March 16, 2021,[27] defendants provided, as an exhibit to their sur-reply to the instant motion, a letter to plaintiffs' counsel dated November 7, 2022, which states that "the STPSO Employee roster for the period 3/14/21 through 3/20/21" was enclosed.[28]

Defendants have not explained why it took nearly three months from plaintiffs' discovery requests for them to provide Travis' and Evans' names. On the other hand, plaintiffs have not explained why they did not take any steps to identify the Doe defendants during the discovery process until six days before the deadline for amendments to pleadings. Defendants also point out[29] that plaintiffs were already aware of Lubrano and Graham at the time of filing the original complaint, but did not name them as defendants in their first or second amended complaints. The Court recognizes that plaintiffs would not have been able to name Travis or Evans until defense counsel provided their names on October 24, 2022, and November 2, 2022, respectively. But that only explains the late addition of those two defendants.[30] On balance, therefore, plaintiffs have only partially explained the timing of their motion. Therefore, the Court finds that the first factor of the good-cause analysis is neutral, weighing neither in favor nor against granting leave to amend.

---

[27] R. Doc. No. 69-1, at 6 n.1.

[28] R. Doc. No. 110-13.

[29] R. Doc. No. 78, at 17.

[30] Plaintiffs state that they identified the fifth defendant, Dale Galloway, "through their own due diligence after inaction by opposing counsel." R. Doc. No. 69-1, at 9. The timing of this identification is not clear.

Considering the second factor, the proposed addition of the identities of the Doe defendants is unquestionably important, as plaintiffs' First Amendment claim against those defendants cannot otherwise proceed. Plaintiffs also argue that the proposed amendments to "correct the addresses of the Exxon gas station and STPSO offices that [p]laintiffs visited" and to "clarify facts relating to their attempts to file that complaint," are necessary "to maintain an accurate and factual account of the events" leading up to Thomas' search of Washington.[31] Plaintiffs do not explain what if any bearing the proposed factual amendments have with respect to the merits of Washington's claim against Thomas. Therefore, while the importance of the proposed factual amendments appears negligible, the obvious importance of the proposed addition of the Doe defendants' identities weighs in favor of granting leave to amend.

As to the third and fourth factors, plaintiffs argue that the proposed amendments will not cause prejudice because depositions of Lubrano, Travis, Graham, and Galloway have already been noticed, and the proposed amendment does not add any new causes of action.[32] Defendants do not clearly argue that the proposed amendments will cause prejudice, but do suggest that the newly identified defendants did not have notice, based on the previous complaints in this matter, that they would be added as defendants.[33]

The Court agrees that the addition of new defendants could cause prejudice to those defendants if they were forced to defend themselves on short notice, but, as the

---

[31] *Id.*

[32] *Id.* at 10.

[33] R. Doc. No. 78, at 7.

13

Court has already recognized,[34] a continuance would be necessary if plaintiffs are granted leave to amend. Such a continuance would cure any prejudice to the newly named defendants.

Balancing all four factors, the plaintiffs have established good cause for granting leave to amend with respect to the identification of the Doe defendants. However, they have not established good cause with respect to the proposed factual amendments. Therefore, the Court will proceed to the prescription analysis as to the Doe defendants, applying "the more liberal standard of Rule 15(a)." *Davis*, 2011 WL 13203134, at *1.

### b. Prescription

As discussed above, an amendment that asserts a claim for which the prescriptive period has run is futile. *Dalrymple*, 2020 WL 1181845, at *7. "It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling,* 234 F.3d at 872–73. Therefore, if plaintiffs' claims against the Doe defendants are prescribed, the Court may deny their motion for leave to amend notwithstanding a showing of good cause.

---

[34] This Court has already recognized that, if the motion for leave to amend is granted, the trial date and other dates in this matter will need to be continued. R. Doc. No. 76 at 1 (denying plaintiffs' motion to expedite consideration of their motion for leave to file an amended complaint, but "recogniz[ing] that, should the motion for leave to file an amended complaint be granted, a continuance of this case and related deadlines would be necessary"). As defendants discuss at length, plaintiffs have previously sought extensions of various deadlines, including the trial date, in this matter. The Court denied plaintiffs' motions to continue the trial date and to extend the deadlines for expert reports and the close of discovery, R. Doc. Nos. 43, 44, but has granted plaintiffs' motions to continue submission dates of certain motions. R. Doc. Nos. 35, 98.

The traffic stop, and plaintiffs' subsequent attempts to file a non-judicial complaint, occurred between the dates of March 13, 2021, and March 15, 2021.[35] Neither party asserts that the cause of action accrued later than the date of injury. Pursuant to Louisiana law, therefore, the prescriptive period on plaintiffs' claims, unless interrupted, expired no later than March 15, 2022. *Smith*, 827 F.3d at 421. Plaintiffs' claims against the now-named Doe defendants are therefore facially prescribed unless (1) they relate back to the date of the original complaint pursuant to Rule 15, or (2) pursuant to Louisiana law, the prescriptive period as to the Doe defendants was interrupted by the filing of the original complaint. *Harris*, 198 F.3d at 157.

Plaintiffs do not argue that their claims relate back.[36] Instead, they argue that the filing of the original complaint interrupted the prescriptive period as to the Doe defendants, because the original complaint alleged that the Doe defendants were "liable jointly, severally, and *in solido*" with the named defendants.[37] Defendants

---

[35] *See* R. Doc. No. 29.

[36] Plaintiffs do not argue that their amendment relates back to the original complaint pursuant to Rule 15(c), as they recognize that an amendment to substitute a named party for a Doe defendant does not relate back pursuant to that rule. R. Doc. No. 97-1, at 14 (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998)). Instead, they argue that the filing of the original complaint interrupted the prescription as to the Doe defendants, and that the proposed amended complaint would therefore be filed within the prescriptive period. Accordingly, defendants' arguments as to whether or not Louisiana law allows plaintiffs' amended complaint to relate back are inapposite. R. Doc. No. 78, at 5.

[37] R. Doc. No. 69-1. It is not clear whether plaintiffs are arguing that Thomas and the Doe defendants are solidary obligors or joint tortfeasors, as they use both terms throughout their motion. *See* R. Doc. No. 69-1, at 12. The parties need not be joint tortfeasors in order to be solidary obligors. *Sampay v. Morton Salt Co.*, 395 So.2d 326, 328 (La. 1981).

argue that the remaining claim against Thomas—that he unlawfully searched Washington—"has absolutely nothing to do with" the claims against the Doe defendants, that "no solidary obligation exists" between Thomas and the Doe defendants, and that the timely filed claim against Thomas therefore did not interrupt prescription as to the Doe defendants.[38]

In support of their argument, plaintiffs cite several cases from this district in which the court found that § 1983 claims against unknown defendants were not prescribed where the plaintiffs originally alleged that those defendants were liable *in solido* with identified defendants. *Durant v. Gretna City*, No. 19-1472021, 2021 WL 1109490, at *1 (E.D. La. Mar. 23, 2021) (Brown, C.J.) (finding that timely claims against city, police chief, and one identified police officer interrupted prescription as to a previously unidentified police officer who participated in the alleged detention and beating of plaintiff); *Sanchez v. Tangipahoa Parish Sheriff's Office*, No. 08-1227, 2010 WL 1729381, at *1 (E.D. La. Apr. 22, 2010) (Lemmon, J.) (finding that timely claims against a sheriff and city interrupted prescription as to police officers who allegedly shot and killed decedent); *Evans v. Edwards*, No. 14–41, 2015 WL 3454737, at *4 (E.D. La. May 29, 2015) (Knowles, M.J.) (finding that timely claims against a sheriff, jail warden, and jail administrator interrupted prescription as to unidentified deputies who allegedly beat the plaintiff).[39]

---

[38] R. Doc. No. 78, at 9–10.

[39] The *Sanchez* and *Evans* courts appeared to take plaintiffs' allegations of joint and solidary liability at face value, with little legal analysis. 2010 WL 1729381, at *2; 2015 WL 3454737, at *4. *Durant*, which relied on *Sanchez*, determined that plaintiff's fact allegations that the two officers "knew of each other's excessive use of

Though plaintiffs alleged that the defendants were liable jointly and *in solido*, the facts in their complaint do not sufficiently support joint liability between Thomas and the Doe defendants.[40] The Court recognizes that obligors may be solidary "[a]lthough their obligations arise from different acts and for different reasons[.]" *Joiner v. Diamond M Drilling Co.*, 688 F.2d 256, 262 (5th Cir. 1982) (determining that a doctor, manufacturer, and shipowner were solidary obligors when their separate negligent acts caused the plaintiff's death). But solidary obligors still must be "obligated for the same thing." *Id.*

Thomas and the Doe defendants are named in different causes of action, alleged under different constitutional provisions, stemming from different factual circumstances. The closest that plaintiffs get to allegations of joint tortfeasor liability is an allegation that "Doe defendants were aware, or should have been aware . . . that Individual Defendants [including Thomas] engaged in misconduct" but that the Doe defendants nevertheless failed to investigate that alleged misconduct.[41] Plaintiffs do not allege, however, that Thomas was aware of the Doe defendants' conduct. And plaintiffs do not point to any allegation in their complaint supporting the conclusion

---

force . . . but took no steps to prevent or end it" sufficiently supported an allegation of joint and solidary liability. 2021 WL 1109490, at *6.

[40] As claims against all other defendants have been dismissed, prescription as to the Doe defendants hinges on joint liability with Thomas. *See Evans*, 2015 WL 3454737, at *4 (noting that, should it be determined that defendants are not solidary obligors or joint tortfeasors, prescription will not be interrupted as to the other joint tortfeasors/solidary obligors not timely sued since no joint or solidary obligation exists"); *Durant*, 2021 WL 1109490, at *6; *Sanchez*, 2010 WL 1729381, at *2 ("[I]f it is later determined that the defendants timely sued have no liability, prescription of the plaintiffs' claims against [defendants not timely sued] will not be interrupted.").

[41] R. Doc. No. 1, ¶ 256.

that Thomas and the Doe defendants are "obligated for the same thing." *Joiner*, 688 F.2d at 262. A bare recitation of joint liability does not overcome that deficiency.

Plaintiffs appear to suggest that, even if their complaint does not support solidary liability between the Doe defendants and Thomas, this Court may nevertheless find that interruption as to the Doe defendants was interrupted by the timely filing of a complaint against Sheriff Smith, and that the prescriptive period started anew when this Court dismissed the claims against Smith on November 8, 2022.[42]

It is true that when prescription is interrupted and the interruption ceases, "[p]rescription commences to run anew from the last day of interruption." La. Civ. Code Ann. Art. 3466. However, "when no liability is found on the part of the timely sued tortfeasor, prescription *will not be interrupted* as to the other joint tortfeasors not timely sued[.]" *Pastor*, 2002 WL 550983, at *2 n.3; *accord Durant*, 2021 WL 1109490, at *6; *Sanchez*, 2010 WL 1729381, at *2; *Gebhardt*, 652 So.2d at 152. This Court has already made a finding of no liability as to all timely sued defendants other than Thomas. Therefore, the timely claims against all defendants other than Thomas cannot interrupt the prescriptive period as to the Doe defendants.

---

[42] R. Doc. No. 97-1, at 15 (asserting that "[e]ven if prescription against Doe Defendants ceased to be interrupted on November 8, 2022," then the prescriptive period began to run anew on that same day); 17 (suggesting that, if Thomas and the Doe defendants are later determined to not be solidary obligors or joint tortfeasors, then "interruption would have ceased on November 8, 2022," when this Court dismissed most of plaintiffs' claims").

Because the plaintiffs' complaint does not sufficiently allege that Thomas and the Doe defendants are liable jointly and *in solido*, the Court finds that the proposed amendment to identify the Doe defendants would be futile, and the motion should therefore be denied.[43]

### c.  *Contra Non Valentem*

In their reply brief, plaintiffs assert that, in the alternative, their motion for leave to file a third amended complaint should be granted pursuant to the doctrine of *contra non valentem*, Louisiana's equitable tolling doctrine. Plaintiffs invoke the discovery rule, which "allows for extension of the prescriptive period where a plaintiff is unable to timely ascertain the identities of defendants." *Konie*, 2011 WL 13359549, at *7.

As discussed above, plaintiffs accuse defendants of obstructionist discovery tactics that, intentionally or not, concealed the identities of potential Doe defendants. Defendants, in turn, accuse plaintiffs of delaying relevant discovery. Though plaintiffs argue that they have demonstrated "unyielding persistence" in their search for the Doe defendants' identities,[44] the Court finds that they have not demonstrated the level of diligence required to justify application of *contra non valentem*.

First, as discussed above, plaintiffs apparently made no effort to identify the Doe defendants via formal discovery until six days before the deadline for

---

[43] As discussed above, plaintiffs have not explained the importance of the proposed amendments to change the address of the gas station and "clarify" certain factual circumstances related to the filing of the complaint. Therefore, the Court concludes that those amendments on their own do not warrant granting leave to amend.

[44] R. Doc. No. 97, at 20.

amendments to pleadings. Plaintiffs were aware of Lubrano and Graham, whom they now seek to add as defendants, at the time of filing their original complaint. *Cf. Walker*, 2015 WL 2354071, at *9 (plaintiff who identified proposed defendants in potential witness list was not entitled to the application of *contra non valentem* to toll the prescriptive period as to those defendants). Though plaintiffs assert that defendants' discovery responses are inadequate, and have been so throughout the discovery process, they never filed a motion to compel further responses. *Konie*, 2011 WL 13359549, at *8.

The Court recognizes that the plaintiffs made efforts outside the discovery process via PRRs, and that their late identification of Travis and Evans is attributable to the timing of discovery responses. But plaintiffs' delays in conducting discovery and failure to timely name defendants of whom they were aware weighs against a finding that plaintiffs have demonstrated the kind of "unyielding persistence" and "exceptional circumstances" necessary to justify application of *contra non valentem. Herdman*, 707 F.2d at 841; *Jones*, 2022 WL 3226755, at *4.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that the claims against the Doe defendants are prescribed, and that plaintiffs' motion for leave to amend is therefore futile. The Court also finds that plaintiffs have not demonstrated good cause for the proposed factual amendments. Accordingly,

**IT IS ORDERED** that the motion for leave to amend is **DENIED.**

New Orleans, Louisiana, December 20, 2022.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**