UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BRUCE WASHINGTON, ET AL.**                           **CIVIL ACTION**

**VERSUS**                                                                    **No. 22-632**

**RANDY SMITH, ET AL.**                                   **SECTION I**

## ORDER & REASONS

Before the Court is a motion[1] by defendant Alexander Thomas ("Thomas") for summary judgment as to plaintiff Bruce Washington's ("Washington") claim of unlawful search.[2] For the reasons that follow, the Court denies the motion.

### I. FACTUAL BACKGROUND

As discussed below, the parties' characterizations of the factual record differ. The facts set forth, in this section, however, are undisputed.[3]

This case arises out of a traffic stop that occurred on the evening of March 13, 2021.[4] Washington was driving his car, with Gregory Lane as the passenger.[5] Deputies from the St. Tammany's Parish Sheriff's Office ("STPSO"), including Thomas, stopped Washington's vehicle for an alleged failure to use his turn signal

---

[1] R. Doc. No. 84.
[2] The motion also requests summary judgment as to plaintiffs' First Amendment claim against various unidentified Doe defendants. The Court recently denied plaintiffs' motion for leave to amend the complaint to identify the Doe defendants. R. Doc. No. 122. The Court therefore will not address the parties' arguments as to that claim.
[3] *See generally* R. Doc. No. 120-1.
[4] *Id*. ¶ 1.
[5] *Id*.

and improper lane usage.[6]

Thomas approached Washington's vehicle on the driver's side and asked for his license and registration.[7] Washington asked Thomas why he had been stopped.[8] Thomas asked Washington where he and Lane were coming from, and Washington further questioned the purpose of the stop.[9] During this exchange, Thomas told Washington that Washington was "going to make this go a different way than it has to be."[10] Thomas then told Washington to exit the vehicle.[11]

Thomas asked Washington if he had any weapons, to which Washington responded, "I don't tote weapons."[12] Thomas responded, "do you mind if I pat you down for officer safety."[13] Washington did not respond verbally.[14] He turned around and put his hands in the air.[15] Thomas responded, "thank you."[16]

The traffic stop continued for approximately fifteen minutes after Thomas patted Washington down, concluding with Washington receiving a traffic citation.

---

[6] *Id.* ¶ 18.
[7] *Id.* ¶¶ 12, 14.
[8] *Id.* 11. The parties dispute whether Washington "interrupted" Thomas by asking why he had been stopped. It is undisputed—and corroborated by Thomas' body camera footage—that Thomas asked Washington for his license and registration and that Washington asked why he had been stopped.
[9] *Id.* ¶¶ 15–21. Again, the parties' characterizations of this conversation differ; the words exchanged, however, appear to be undisputed, and are corroborated by the body camera footage.
[10] *Id.* ¶ 22.
[11] *Id.* ¶ 24.
[12] *Id.* ¶¶ 26–27.
[13] *Id.* ¶ 34. The parties dispute whether this statement was a question. *Id.*
[14] *Id.* ¶¶ 35, 36.
[15] *Id.*
[16] *Id.*

Subsequent to the traffic stop, plaintiffs allegedly attempted to lodge a complaint against Thomas, as well as Deputies Jackson Bridel and Shaun Wood, who were also present at the stop, with the STPSO administrative office. The Court does not further recount these facts here as the only claim properly challenged in defendants' motion for summary judgment is Washington's claim against Thomas for unlawful search.[17]

## I. STANDARDS OF LAW

### a. Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

---

[17] *See supra* note 2.

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255. If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

## B. Qualified Immunity

"Governmental officers sued in their individual capacity are entitled to qualified immunity insofar as their conduct 'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schmidt v. Stassi*, 250 F. Supp. 3d 99, 102 (E.D. La. 2017) (Africk, J.) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, a plaintiff must show two things: first, that the defendant violated their constitutional rights and, second, that the defendant's actions were objectively unreasonable in light of clearly established law. *Salazar v. Molina*, 37 F.4th 278, 281 (5th Cir. 2022); *United States ex rel. Parikh v. Brown*, 587 F. App'x 123, 128 (5th Cir. 2014). A right is "clearly established" for purposes of qualified immunity "when, at the time of the challenged conduct, the contours of the violated right were sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *United States ex rel. Parikh*, 587 F. App'x at 128 (quotation and citation omitted).

"[T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir.2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). Once the defense is raised, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). The plaintiff must likewise "adduce[ ] sufficient evidence to raise a genuine issue of material fact suggesting [the defendant's] conduct violated an actual

constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Though the plaintiff bears the burden of negating the availability of qualified immunity, all inferences are still drawn in the plaintiff's favor. *Brown*, 623 F.3d at 253.

## II. ANALYSIS

### a. Unlawful Search Under the Fourth Amendment

In order to justify the frisk of Washington, Thomas must have had reasonable suspicion that Washington was armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 332 (2009); *Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977). Reasonable suspicion must be supported by "specific and articulable facts suggesting actual physical risk to [the officer] or others." *United States v. Jenson*, 462 F.3d 399, at 407 (5th Cir. 2006) (quotation and citation omitted). Reasonable suspicion is to be "determined by looking to 'the totality of the circumstances—the whole picture.'" *United States v. Jordan*, 232 F.3d 447, 449 (5th Cir. 2000) (quoting *United States v. Sokolow*, 490 U.S. 1, 7–8 (1989)).

A frisk that is not justified by reasonable suspicion may nevertheless be constitutional if there is consent to the search. *United States v. Montgomery*, 777 F.3d 269, 272–73 (5th Cir. 2015). However, "[c]onsent is valid only if voluntary." *United States v. Gomez-Moreno*, 479 F.3d 350, 357 (5th Cir. 2007), *overruled on other grounds by Kentucky v. King*, 563 U.S. 451 (2011). To determine if consent is voluntary, the Fifth Circuit considers six factors:

> 1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to

6

refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found.

*United States v. Hernandez*, 279 F.3d 302, 307 (5th Cir. 2002). No factor is determinative. *United States v. Guidry*, No. 18-414, 2018 WL 6725372, at *3 (E.D. La. Dec. 21, 2018) (Ashe, J.) (citing *United States v. Shabazz*, 993 F.2d 431, 438 (5th Cir. 1993)). Furthermore, "[i]t is well established that a defendant's mere acquiescence to a show of lawful authority is insufficient to establish voluntary consent." *United States v. Jaras*, 86 F.3d 383, 390 (5th Cir. 1996) (citing *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968) (further citations omitted); *see also Florida v Royer*, 460 U.S. 491, 497 (1983) (noting that consent is not established by a showing of "mere submission to a claim of lawful authority").

"[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, (1973). "Voluntariness of consent is an objective inquiry that asks 'what would the typical reasonable person have understood by the exchange.'" *United States v. Bogomol*, No. 18-11486, 2021 WL 3620444, at *4 n.6 (5th Cir. 2021) (unpublished) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).

Having reviewed the record, the Court concludes that there are genuine issues of material fact as to whether Thomas had reasonable suspicion to search Washington and whether Washington consented to the search.[18] The Court likewise concludes

---

[18] The Court does not wade into the plaintiffs' evidentiary objections to portions of Washington's deposition testimony and certain defense exhibits. R. Doc. No. 120, at

7

that there are genuine issues of material fact as to whether Thomas' conduct was objectively reasonable in light of the clearly established law governing frisks. *United States ex rel. Parikh*, 587 F. App'x at 128. Therefore, the Court concludes that Washington has carried his burden of establishing genuine factual issues as to whether Thomas committed a constitutional violation, and whether his conduct violated clearly established law. *Brown*, 623 F.3d at 253; *Brumfield*, 551 F.3d at 326.

Both parties point to the body camera footage of the traffic stop as supportive of their respective positions. Thomas asserts that the footage shows that Washington was "argumentative,"[19] "reluctant and evasive,"[20] and that he "refused to comply with initial commands."[21] Plaintiffs, in contrast, argue that the footage shows that Washington was simply asking "legitimate questions as to the basis for the traffic stop," and point out that the footage shows Washington complying with Thomas' commands.[22]

---

8–10. The Court also does not take any position with respect to whether certain of defendants' responses to plaintiffs' requests for admission constitute default admissions. *Id.* at 10. The Court notes that "[t]he denial of a request for admission 'as written' *without further explanation* is evasive." *Hamm v. Acadia Healthcare*, No. 20-1515, 2020 WL 9597790, at *3 (E.D. La. Sept. 25, 2020) (Douglas, M.J.) (emphasis added) (citing *Janko v. Fresh Mkt., Inc.*, No.13-648, 2015 WL 4714928, at *2 (M.D. La. Aug. 5, 2015) (further citations omitted)).
[19] R. Doc. No. 84-2, at 11.
[20] *Id.* at 15.
[21] *Id.* at 12.
[22] R. Doc. No. 120, at 22–23.

Thomas further argues, pointing to his own deposition testimony, that his experience as an officer led him to believe that Washington may have been armed.[23] Plaintiffs point out, however, that a portion of Thomas' testimony suggests that Thomas did not believe he had the authority to search Washington without consent.[24] Taken together, the parties' factual disputes preclude summary judgment as to whether Thomas' actions violated the clearly established law that requires officers to have reasonable suspicion that a person is armed and dangerous before conducting a frisk.[25]

As to whether Washington consented to the frisk, Thomas claims—without applying the voluntariness factors set out above—that "any objective, reasonable person, after reviewing the body camera footage, would have understood by the exchange between Deputy Thomas and Mr. Washington, that [Washington's actions]

---

[23] R. Doc. No. 125, at 8 (Q: "[D]id all of these things taken in toto give you what you believe to be reasonable suspicion of Mr. Washington at that point in time?" A: "It did.").

[24] R. Doc. No. 84-2, at 20; R. Doc. No. 120-6, at 98:8–21 (Q: "If Mr. Washington had told you that he didn't consent to being patted down . . . would you have patted him down?" [objection omitted] A: "No sir. Not at that exact moment." Q: "What do you mean by that?" A: " . . . If he would have done something that warranted one against his consent, then sure, I would have done one. But for the facts that we had at that moment, no.")

[25] The Court notes that alleged uncooperativeness does not alone establish reasonable suspicion that a person is armed and dangerous, *Estep v. Dallas Cnty.*, 310 F.3d 353, 359 (5th Cir. 2002), and that "a conclusional statement that a suspect appeared nervous" is entitled to "little or no weight." *United States v. Portillo-Aguire*, 311 F.3d 647, 656 n.49 (5th Cir. 2002). Moreover, to the extent that the stop occurred in a high crime area, which the parties dispute, that circumstance also cannot, on its own, establish reasonable suspicion. *United States v. Hill*, 752 F.3d 1029, 1035–36 (5th Cir. 2014).

signaled that he was consenting the officer safety patdown."[26] But plaintiffs point to evidence in the record that, if credited, would allow a factfinder to determine that Washington's actions indicated mere acquiescence rather than voluntary consent. For example, plaintiffs point out that the frisk occurred just after Thomas told Washington that Washington was going to make the stop "go a different way." The intended meaning of this statement is unclear, but at this stage, the Court must draw all reasonable inferences in Washington's favor. *Anderson*, 477 U.S. at 255. This statement, in combination with the other facts pointed to by Washington,[27] raises a genuine issue of material fact as to whether it was objectively reasonable for Thomas to believe he had Washington's consent for the frisk.[28]

Because Washington has pointed to specific facts, supported by competent evidence, that show genuine issues of material fact as to whether Thomas engaged in conduct that violated the clearly established law of frisks, summary judgment must be denied. *Brown*, 623 F.3d at 253.

Accordingly,

**IT IS ORDERED** that Thomas' motion for summary judgment is **DENIED**.

---

[26] R. Doc. No. 84-2, at 19 (footnote omitted); *see also* R. Doc. No. 125, at 22.
[27] Plaintiffs also point to the presence of three deputies during the traffic stop, as supported by the body camera footage; and Washington's declaration stating that he "fe[lt] that [Thomas] was threatening him" and that he "did not want [Thomas] to [pat him down] but [he] knew that if [he] said no, he would pat [him] down anyway[.]" R. Doc. No. 120-4, ¶¶ 9–10.
[28] Defendants argue that the case law cited by plaintiffs is not sufficiently factually analogous to clearly establish that Thomas' alleged conduct was unlawful. However, plaintiffs have pointed to case law establishing that silence or mere acquiescence is insufficient to establish consent.

New Orleans, Louisiana, December 22, 2022.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**