**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| BRUCE WASHINGTON,<br><br>                           Plaintiff,<br><br>            v.<br><br>RANDY SMITH, in his official capacity as SHERIFF OF ST. TAMMANY PARISH, LOUISIANA; JACKSON BRIDEL in his individual capacity; ALEXANDER THOMAS in his individual capacity; SHAUN WOOD in his individual capacity; and JOHN DOE EMPLOYEES OF THE ST. TAMMANY PARISH SHERIFF'S OFFICE in their individual capacities,<br><br>                           Defendants. | CIVIL ACTION NO. 2:22-cv-00632-LMA-MBN<br><br><br>JUDGE BRANDON S. LONG<br><br><br>MAGISTRATE JUDGE MICHAEL NORTH |

**JOINT PRE-TRIAL ORDER**

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, a Pretrial Conference will be conducted in this proceeding by the Honorable Brandon S. Long, United States District Judge, on April 23, 2025.

**PRESENT AT TRIAL WILL BE:**

**1. Plaintiff**

Adam Lurie (pro hac vice)
Bar No. 4054979 (New York)
Elizabeth M. Raulston (pro hac vice)
Bar No. 5255138 (New York)
Aviva Kushner (pro hac vice)
Bar No. 5891999 (New York)
Max Blinder-Acenal (pro hac vice)
Bar No. 5867304 (New York)

Jarrett Field (pro hac vice)
Bar No. 5907092 (New York)
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-903-9274
adam.lurie@linklaters.com
elizabeth.raulston@linklaters.com
aviva.kushner@linklaters.com
max.blinderacenal@linklaters.com
jarrett.field@linklaters.com

Charles Andrew Perry
Bar No. 40906
Nora Ahmed (pro hac vice)
Bar No. 5092374 (New York)
ACLU FOUNDATION OF LOUISIANA
1340 Poydras St, Ste 2160
New Orleans, LA 70112
Tel: (504) 522-0628
aperry@laaclu.org
nahmed@laaclu.org

## 2.  Defendant

Andrew R. Capitelli          (No. 31649)
Kenneth R. Whittle           (No. 38640)
Sarah A. Fisher              (No. 39881)
Paige S. Stein               (No. 40954)
MILLING BENSON WOODWARD L.L.P
68031 Capital Trace Row
Mandeville, LA 70471
Telephone:    (985) 292-2000
Facsimile:    (985) 292-2001
Email:        acapitelli@millinglaw.com
              kwhittle@millinglaw.com
              sfisher@millinglaw.com
              pstein@millinglaw.com

## I.     DESCRIPTION OF THE PARTIES

Plaintiff:    **BRUCE WASHINGTON**, in his individual capacity.[1]

Defendant:    **ALEXANDER THOMAS,** named in his individual capacity.

## II.    NATURE OF THE ACTION AND JURISDICTION

This court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.  This is a civil action based under the United States Constitution and federal laws of the United States pursuant to 42 U.S.C. § 1983.  There is no dispute as to the subject matter jurisdiction.

## III.    BRIEF SUMMARY OF FACTUAL AND LEGAL CLAIMS

### 1.    Plaintiff's Claims

#### a.    Factual Claims

In the evening of March 13, 2021, Bruce Washington and Gregory Lane were stopped for alleged (and later dismissed) moving violations.  After Mr. Washington exited the Exxon gas station on Highway 190, St. Tammany Parish Sheriff's Office ("**STPSO**") Deputies Alexander Thomas and Shaun Wood followed the vehicle for approximately one mile before pulling Mr. Washington over in the Smoothie King parking lot on Highway 190.  While Deputies Thomas and Wood were following Mr. Washington, a van without taillights sped by both vehicles.  The video footage provided by the STPSO indicates that the stop lasted approximately twenty minutes.

When Deputy Thomas approached his vehicle, Mr. Washington lawfully asked Deputy Thomas for the reason of the stop.  Deputy Thomas refused to so inform Mr. Washington until he provided his license, registration, and insurance.  Deputy Thomas further told Mr. Washington that if he did not comply with his every request, the traffic stop would "go a different way."

Deputy Thomas instructed Mr. Washington to tell Mr. Lane to roll down his window; Mr. Washington complied.  Deputy Thomas commanded Mr. Washington to tell Mr. Lane to open the

---

[1] **GREGORY LANE**, in his individual capacity, was co-plaintiff in the Second Amended Complaint, and was present at the incident.  While his claims were dismissed, *see* R. Doc. 61, he has not waived his right to appeal after final disposition of this case.

passenger-side door; Mr. Washington complied.  Deputy Thomas ordered Mr. Washington to stay in the vehicle; Mr. Washington complied.  Deputy Thomas requested Mr. Washington's license, registration, and insurance information; Mr. Washington complied.  Deputy Thomas ordered Mr. Washington to exit the vehicle; Mr. Washington complied.

Deputy Thomas proceeded to shout various orders at Mr. Washington and Mr. Lane; question Mr. Washington about his origin, destination, and arrest history; run dispatch and computer checks on both occupants of the vehicle; briefly take a personal phone call; and delay the actual issuance of the traffic citation.  Throughout the stop, Mr. Washington and Mr. Lane were humiliated, and treated discourteously and disrespectfully.

Critically, Deputy Thomas conducted a nonconsensual frisk of Mr. Washington.  After threatening that the stop could "go a different way," Deputy Thomas ordered Mr. Washington out of the vehicle and asked if he was armed.  Mr. Washington truthfully answered that he "does not tote weapons."  Though there was no criminal activity underway or imminent, Deputy Thomas searched Mr. Washington anyway.

Deputy Wood ordered Mr. Lane out of the vehicle because he was "acting weird," conducted a search of his person, confiscated his ID, and continuously denied him the use of his cellphone to contact his wife.  At Deputy Thomas's order, Deputy Wood also issued and signed the (later-dismissed) traffic citation, despite not having witnessed one of the alleged infractions.

A third STPSO officer, Deputy Jackson Bridel, arrived in the Smoothie King parking lot minutes after Deputy Thomas and Deputy Wood approached Mr. Washington and Mr. Lane.  All three STPSO deputies refused to provide the name of their supervisor when requested by Mr. Washington and Mr. Lane.[2]

---

[2] STPSO employees are trained to "always assist the public when a request is made." SOP.0500:01.220.

The traffic stop was documented by the citation signed by Deputy Wood and Captain John Evans, the CAD report, and a Daily Observation Report of Deputy Shaun Wood written by Deputy Thomas and signed off on by STPSO Corporal Jeremy Travis.

Mr. Washington and Mr. Lane believe the deputies engaged in misconduct and sought to file a complaint regarding the same with the STPSO office on March 15, 2021, to no avail.

### b. Legal Claims

Deputy Thomas violated the United States Constitution, statutes, rules and regulations enacted to protect citizens from unwarranted searches when he conducted a search of Mr. Washington's person without consent.

First, Deputy Thomas's actions were unlawful because he did not have reasonable suspicion based on articulable facts to justify a nonconsensual search of Mr. Washington. *See United States v. Jenson*, 462 F.3d 399, 407-08 (5th Cir. 2006); *Terry v. Ohio*, 392 U.S. 1, 27 (1968). An STPSO deputy who "reasonably believe[s] that the person stopped intends to do him bodily harm or is carrying a concealed weapon" may conduct a weapons frisk. STPSO SOP.2250:01:060. Here, Deputy Thomas testified that he did not have reasonable suspicion to conduct a nonconsensual frisk of Mr. Washington. R. Doc. 120 at 7; Thomas Dep. Tr. 108:16-109:4. Deputy Thomas instead argues that his nonconsensual frisk was justified because Mr. Washington was "argumentative." This rationale directly contradicts STPSO policy, which maintains that "where citizens refuse or cease to cooperate during a contact, the refusal itself cannot be used as the basis for escalating the encounter into a stop and frisk." SOP.2250:01:050.2.

Second, Mr. Washington did not freely and voluntarily consent to Deputy Thomas's search of his person. *See* R. Doc. 120 at 18-22; R. Doc. 38 at 26.

Third, an objective, reasonable person would not have understood by the exchange between Mr. Washington and Deputy Thomas that Mr. Washington gave valid consent to Deputy Thomas

to perform the search.  A reasonable person would not have felt free to decline a request to search when the requesting officer had just told them that if they did not comply with orders, the stop would "go a different way." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973) (the Fourth Amendment requires "that a consent not be coerced, by explicit or implicit means, by implied threat or covert force[,] [f]or no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed").

A reasonable person would also believe that an officer requesting consent to search "for officer safety" has lawful authority to search them.  Body camera footage of the incident suggests that STPSO officers are trained to phrase a request for consent to search by asking, "Do you mind if I pat you down…for officer safety?"  Thomas Body Camera Footage at 0:02:26-0:02:27.  Such phrasing coercively implies that an officer has lawful authority to search a person; however, submission to a claim of lawful authority is not consent.  *See Bumper v. North Carolina*, 391 U.S. 543, 549 (1968).  Deputy Thomas was aware on March 13, 2021 that "consent must be voluntarily given.  If a deputy requests consent from a citizen under circumstances which a reasonable person would consider coercive, then deputies must seek a warrant."  STPSO SOP.0200:01.450.

The foregoing claims for relief are pleaded collectively and in the alternative.

### 2.    Claims of Defendant

### a.  Factual Claims

On the night of March 13, 2021, at approximately 8:01 p.m., Plaintiff, Bruce Washington, was operating his vehicle, in which Plaintiff, Gregory Lane, was a passenger. Plaintiffs were pulled over by Defendant-Deputy Alexander Thomas, and Deputy Shaun Wood, as a result of traffic violations, in a known high crime area, and where the St. Tammany Parish Sheriff's Office (hereinafter referred to as "STPSO"), deals with a lot of drug and other criminal activity. Deputy

Jackson Bridel pulled up to the traffic stop in a separate STPSO vehicle shortly after the stop ensued.

The events that transpired next are not in dispute as they were recorded on body cameras. Specifically, the following exchange occurred:

- During the traffic stop, Deputy Thomas introduced himself to Mr. Washington stating "Hey, how's it going? Deputy Thomas with the St. Tammany Parish Sheriff's Office, okay?"

- Mr. Washington then interrupted Deputy Thomas, demanding to know "What did you stop me for?"

- In response, Deputy Thomas replied "Okay, couple of reasons that I'm stopping you. First off, I need your license, registration and insurance, and then I will tell you why I stopped you, okay? Alright?"

- Mr. Washington ignored Deputy Thomas' request that Mr. Washington provide his driver's license, vehicle registration and proof of insurance, and instead replied "I want to know why you stopped me first."

- Deputy Thomas then replied to Mr. Washington "And I need your license, okay?"

- Mr. Washington again ignored Deputy Thomas' request, and instead replied "Well why did you stop me?"

- In response, Deputy Thomas stated to Mr. Washington that "I, I want to tell you that, as soon as, as soon as you give me your license I'm going to explain that."

- Mr. Washington then began to reach for the requested documentation while remarking "And a van pass me up with no taillights and you stop me?"

- Deputy Thomas then explained to Mr. Washington that he had stopped him for failure to use his turn signal, and improper lane usage.

- Mr. Washington then argued that Deputy Thomas was incorrect, and that he did in fact use his blinker.

- Deputy Thomas then asked Mr. Washington "Where are y'all coming from other than the gas station sir?"

- Mr. Washington, however, ignored Deputy Thomas' question.

- While reviewing the documentation provided by Mr. Washington, Deputy Thomas asked Mr. Washington "Where are y'all headed to," to which Mr. Washington

replied, "What does that got to do with you pulling me over?"

- Deputy Thomas then replied that he was just asking a question, and that Mr. Washington was going to make this go a different way than it has to.

- Mr. Washington then argued to Deputy Thomas that "You're the one making it go a different way, I'm just saying I know my law."

- Deputy Thomas then requested that Mr. Washington exit the vehicle.

- Mr. Washington then exited the vehicle while remarking to Deputy Thomas that "You're the one asking me crazy questions."

- Deputy Thomas then asked Mr. Washington if he had any weapons on him. Mr. Washington replied, "I don't tote weapons."

- Deputy Thomas then asked Mr. Washington "Do you mind if I pat you down for officer safety?"

- In response to Deputy Thomas' request, Mr. Washington consented to the search, raising his hands into the air and turning his back to Deputy Thomas in order to allow Deputy Thomas to perform the officer safety pat down, to which Deputy Thomas replied, "Thank you."

Mr. Washington never told Deputy Thomas that he did not have his consent to perform the officer safety pat down. As consistently noted by the Supreme Court and Appellate Courts throughout the country, Mr. Washington's behavior and actions were objectively consistent with acceptance and compliance, and he gave **no** indication of dissent or resistance to the search. Moreover, Deputy Thomas had reasonable suspicion for the pat down. The officer safety pat down lasted less than ten (10) seconds. After completion of the officer safety pat down, Deputy Thomas responded "Cool deal. Now come over here by the front of my car."

After a subsequent records check was performed on both Plaintiffs, Defendant was informed by the STPSO that Mr. Washington had an open warrant for a traffic-related offense in Bogalusa, Louisiana. After notifying Mr. Washington of the open warrant, Defendant issued a traffic citation to Mr. Washington at 8:19 PM. The traffic stop was concluded at 8:21 PM, having lasted a total of twenty (20) minutes.

### b. Legal Claims

Under the totality of the circumstances analysis, Deputy Thomas had reasonable suspicion to justify the search of Mr. Washington. Specifically: (1) the stop took place at night in a known crime area; (2) Mr. Washington was loud, angry and argumentative from the very beginning of the stop; (3) Mr. Washington refused to comply with Deputy Thomas' initial commands to provide his license, registration and proof of insurance; (4) Mr. Washington was reluctant and evasive in responding to Deputy Thomas' questions, including, but not limited to, regarding weapons on his person; and (5) of his experience as a law enforcement officer in similar situations.

Alternatively, any objective, reasonable law officer under the circumstances would have believed that Deputy Thomas had Mr. Washington's consent to perform the officer safety pat down. The United States Supreme Court has held that the standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect? *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991), citing *Illinois v. Rodriguez*, 497 U.S. 177, 183-189 (1990); *See also Florida v. Royer*, 460 U.S. 491, 501-502, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983). Although objective reasonableness is a question of law, the factual circumstances are highly relevant when determining what the reasonable person would have believed to be the outer bounds of the consent that was given. *See United States v. Jason*, 203 Fed. Appx. 625, 626-627 (5th Cir. 2006). Additionally, the Fifth Circuit has held that consent to a warrantless search need not be explicit and can "implied from silence or failure to object if it follows a police officer's explicit or implicit request for consent,"[3] and the Supreme Court, as well as Appellate Courts across the country, have consistently held that implied consent to a search can be inferred from non-verbal conduct, actions and gestures reasonably communicating consent following an

---

[3] *United States v. Escamilla*, 852 F.3d 474, 484 (5th Cir. 2017) (quoting *United States v. Martinez*, 410 F. App'x 759, 763 (5th Cir. 2011)).

officer's request to perform a search.[4] Indeed, the Eastern District has previously found consent to be voluntary wherein an individual has assumed a "search position" against the wall, even without the individual verbally indicating whether or not he actually consents to the search. *United States v. Roser*, 724 F. Supp. 426 (E.D. La. 1989).

Here, as shown on the body camera footage, Mr. Washington consented to Deputy Thomas' request to perform an officer safety pat down of his person. Deputy Thomas asked Mr. Washington "Do you mind if I pat you down for officer safety." *See* Thomas Body Camera Footage at 0:02:24-0:02:40. In response to Deputy Thomas' request, Mr. Washington voluntarily raised his hands into the air and turned his back to Deputy Thomas in order for Deputy Thomas to perform the officer safety pat down, to which Deputy Thomas replied, "Thank you." *See* Thomas Body Camera Footage at 0:02:24-0:02:30. Again, Mr. Washington never told Deputy Thomas that he did not have his consent to perform the officer safety pat down, and all of his actions immediately following Deputy Thomas' request were consistent with non-verbal, implied consent. *See* Thomas Body Camera Footage at 0:02:24-0:02:40.

Additionally, Deputy Thomas testified that Mr. Washington's response to his request to perform an officer safety pat down implied that Mr. Washington consented to the search, explaining that:

---

[4] *United States v. Drayton*, 536 U.S. 194 (2002)(silently lifting hands in response to the officer's request "Mind if I check you?," was considered consent to a pat-down); *See also*, *United States v. Martinez*, 537 Fed. Appx. 340 (5th Cir. 2013)("This is not a case where Martinez remained silent, and the officer assumed that her silence indicated consent. Rather, Martinez affirmatively acted in compliance with Sedeno's requests…Martinez's actions in disrobing and squatting indicate her consent, not mere acquiescence, to Sedeno's requests."); *United States v. Cooper*, 43 F.3d 140, 148 (5th Cir. 1995)(noting that a suspect demonstrated cooperation when he voluntarily stood for a patdown search); *United States v. Chrispin*, 181 F. App'x 935, 939 (11th Cir. 2006) (per curiam) ("[A]lthough [defendant] did not express his verbal assent to be searched, his body language—turning away from [the officer] and placing his hands on the police cruiser as if preparing to be searched—gave implied consent"); *United States v. Vongxay*, 594 F.3d 1111, 1119-20 (9th Cir. 2010) (holding defendant consented to search by raising his hands to his head in response to an officer's request to search for weapons); *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001) (defendant's gesture of opening his arms in response to a request to search constituted implied consent); *United States v. Mendoza-Cepeda*, 250 F.3d 626, 629 (8th Cir. 2001) (defendant's gesture of raising arms in response to request to search torso constituted implied consent); *United States v. Wilson*, 895 F.2d 168, 172 (4th Cir. 1990) (implied consent found where defendant responded to request to search by "shrugging his shoulders and raising his arms").

"He placed his hands either on the vehicle or right above the vehicle…And he spread his legs…I worked in corrections for over four years. I've done thousands of pat-downs, and that is the most common pat-down position. And anyone that has been involved in a -- the criminal justice setting, whether it's a law enforcement side or the arrestee side, will tell you that that's the position you assume for a pat-down. And so when he did that, that's what I assumed was his consent. It implied consent to me searching." *See* Deposition Testimony of Deputy Thomas pgs. 101-102, lines 13-5.

Deputy Thomas further testified that he believed "A thousand percent," that Mr. Washington freely gave him consent to search his person without feeling coerced, and that the basis for performing the stop and frisk on Mr. Washington was his consent. *See* Deposition Testimony of Deputy Thomas pg. 102, lines 13-15; pg. 107, lines 21-23. Deputy Thomas additionally testified that he believed Mr. Washington consented to the search due to the fact that "[w]hen I asked him, he assumed the most common pat-down position and at no point said no or opposed to the search. Even after, he never opposed it." *See* Deposition Testimony of Deputy Thomas pg. 148, lines 15-21.

Deputy Thomas is further entitled to qualified immunity, as clearly established law does not show that the actions of Deputy Thomas during the search violated the Fourth Amendment rights of Mr. Washington. Indeed, the Supreme Court, Fifth Circuit and other Circuits have consistently held that nearly identical conduct to that of Deputy Thomas' is constitutional and not a violation of the Fourth Amendment.

## IV.    PENDING MOTIONS

Plaintiff's Motion *in Limine* to Admit the Portion of Deputy Thomas's Body-Camera Footage Leading up to the Search and to Exclude Post-Search Footage and any Evidence or Testimony Regarding Events Captured in the Post-Search Footage. (R. Doc. 208.)

Plaintiff's Motion *in Limine* to Exclude Evidence Regarding Plaintiff Bruce Washington's Personal History and Deputy Thomas's Professional History. (R. Doc. 209.)

Plaintiff's Motion *in Limine* to Exclude Evidence or Testimony Regarding Deputy Thomas's Experience as a Corrections Officer. (R. Doc. 211.)

Plaintiff's Motion *in Limine* to Exclude Argument or Evidence Regarding Deputy Thomas's Ability to Pay Damages or the Consequences He Would Suffer if Found Liable. (R. Doc. 212.)

Defendant's Motion *in Limine* to Exclude Certain Witnesses, Testimony and Exhibits at Trial. (R. Doc. 215).

## V. CONTEMPLATED MOTIONS

Neither Plaintiff nor Defendant anticipate any further pre-trial motions at this time.

## VI. LISTING OF ALL UNCONTESTED MATERIAL FACTS[5]

1. This case arises out of a traffic stop that occurred on the night of March 13, 2021, at approximately 8:01 p.m.

2. Mr. Washington was driving his car, with Mr. Gregory Lane sitting in the front passenger seat.

3. Deputy Thomas approached Mr. Washington's vehicle on the driver's side, while at the same time Deputy Shaun Wood separately approached the passenger side of the vehicle where Mr. Lane was sitting.[6]

4. Deputy Thomas introduced himself to Mr. Washington stating, "Hey, how's it going sir? Deputy Thomas with the Sheriff's Office. Can you have your buddy roll down the other window for me please?"[7]

5. Mr. Washington responded, "My window is kind of tight, but it will go down," as he signaled to the window on the passenger's side of the car.[8]

---

[5] R. Doc. 126, at 1-3.
[6] *See* R. Doc. 117-9 at 28.
[7] *See* Body Camera Footage of Alexander Thomas, at 0:00:38-0:00:43.
[8] *Id.* at 0:00:43-0:00:45.

6.  Deputy Thomas replied, "well at least open the door then."[9]

7.  Mr. Lane then opened the door on the passenger's side of the car.[10]

8.  Deputy Thomas then said, "Hey how's it going, Deputy Thomas with the St. Tammany Parish Sheriff's Office, ok?"

9.  Mr. Washington asked Deputy Thomas, "What did you stop me for?"[11]

10. Deputy Thomas replied, "Okay, couple of reasons that I'm stopping you. First off, I need your license, registration and insurance, and then I will tell you why I stopped you, okay? Alright?"[12]

11. Mr. Washington replied, "I want to know why you stopped me for."[13]

12. Deputy Thomas then replied to Mr. Washington, "And I need your license, okay?"[14]

13. Mr. Washington replied, "Well why did you stop me?"[15]

14. Deputy Thomas stated to Mr. Washington that, "I, I want to tell you that, as soon as, as soon as you give me your license I'm going to explain that."[16]

15. Mr. Washington then began to reach for the requested documentation while remarking, "And a van pass me up with no taillights and you stop me?"[17]

16. Deputy Thomas then said, "So look Mr. Bruce, the reason I'm stopping you okay, when you pulled off that side street over there you failed to use your turn signal and you're supposed to turn into the inside lane, you turned into the middle lane of Highway 190,

---

[9] *Id.* 0:00:45-0:00:47.
[10] *Id.* at 0:00:48.
[11] *Id.* at 0:00:48-0:00:53.
[12] *Id.* at 0:00:48-0:00:58.
[13] *Id.* at 0:0:48-0:01:00.
[14] *Id.* at 0:0:48-0:01:02.
[15] *Id.* at 0:0:48-0:01:03.
[16] *Id.* at 0:0:48-0:01:07.
[17] *Id.* at 0:0:48-0:01:11.

okay? It's improper lane use and improper turning. Okay, and failure to use a turn signal, alright."[18]

17. Mr. Washington then responded, "I just come from the gas station, getting gas," to which Deputy Thomas replied, "yeah but that doesn't negate the fact that you didn't use a turn signal and you turned into that inside lane."[19]

18. Mr. Washington then replied, "I did. My blinker went back off. I had my blinker on. My blinker went back off."[20]

19. Deputy Thomas responded, "Not when you were turning, no sir. I was sitting right next to you and seen it. The whole time I was watching you. Okay?"[21]

20. Mr. Washington then responded, "I was in the middle lane."[22]

21. Deputy Thomas then responded, "Look, we're not going to argue. Do you have your registration and insurance, my man?"[23]

22. Deputy Thomas then asked, "do you have your license and registration, my man?"[24]

23. Mr. Washington turned to the middle console of the car to retrieve the relevant papers, while Mr. Lane exited the passenger side of the car.[25]

24. Deputy Thomas then asked Mr. Washington, "Where are y'all coming from other than the gas station sir?"[26]  In response Mr. Washington asked "Can I get out?"[27]

25. Deputy Thomas responded "What do you need to get out for?"[28]

---

[18] *Id.* at 0:0:48-0:01:30.
[19] *Id.* at 0:01:30-0:01:37.
[20] *Id.* at 0:01:38-0:01:42.
[21] *Id.* at 0:01:42-0:01:46.
[22] *Id.* at 0:01:42-0:01:48.
[23] *Id.* at 0:01:48-0:01:50.
[24] *Id.* at 0:01:48-0:01:50.
[25] *Id.* at 0:01:58.
[26] *Id.* at 0:0:48-0:01:59.
[27] *Id.* at 0:02:00-0:02:01.
[28] *Id.* at 0:02:00-0:02:06.

26. Mr. Washington responded "Cuz you asked for the thing, I'm giving you this"[29]

27. Deputy Thomas responded, "Yeah, but what does that have to do with getting out?"[30]

28. While reviewing the documentation provided by Mr. Washington, Deputy Thomas asked Mr. Washington, "Where are y'all headed to,"[31] to which Mr. Washington replied, "What does that got to do with you pulling me over?"[32]

29. Deputy Thomas then replied, "I'm just asking a question bubba. You're going to make this go a different way than it has to be."[33]

30. Mr. Washington then stated to Deputy Thomas that, "You're the one making it go a different way, I'm just saying I know my law."[34]

31. Deputy Thomas then said, "okay hop out, boo. You wanted to hop out, hop out."[35]

32. Mr. Washington then exited the vehicle while remarking to Deputy Thomas that "You're the one asking me crazy questions."[36]

33. Deputy Thomas asked Mr. Washington, "any weapons on you, my man?" to which Mr. Washington responded "I don't tote weapons."[37]

34. Deputy Thomas responded, "No? Do you mind if I pat you down for officer safety."[38]

35. Mr. Washington did not verbally respond to Deputy Thomas.

36. Instead, Mr. Washington responded to Deputy Thomas' request by turning around and putting his hands in the air in order for Deputy Thomas to perform the pat down.

---

[29] *Id.* at 0:02:00-0:02:06.
[30] *Id.* at 0:02:00-0:02:06.
[31] *Id.* at 0:0:48-0:02:10.
[32] *Id.* at 0:0:48-0:02:13.
[33] *Id.* at 0:0:48-0:02:16.
[34] *Id.* at 0:0:48-0:02:18.
[35] *Id.* at 0:0:48-0:02:19.
[36] *Id.* at 0:0:48-0:02:23.
[37] *Id.* at 0:0:48-0:02:25; *see also* R. Doc. 117-9 at 46 (Response to RFA No. 91).
[38] *Id.* at 0:0:48-0:02:28.

37. Deputy Thomas performed the officer safety pat down which lasted between nine (9) and ten (10) seconds.[39]

38. After completing the officer safety pat down, Deputy Thomas responded, "thank you."[40]

39. During the traffic stop, Deputy Wood asked Mr. Lane, "do you mind if I pat you down real quick?"

40. Mr. Lane responded "Sure," and raised his hands in the air while turning his back to Deputy Wood.

41. Deputy Wood then performed a pat down on Mr. Lane.

42. During the pat down, Mr. Lane informed Deputy Wood that he had a pocket knife.[41]

43. During the traffic stop, Deputy Thomas performed a records check on Mr. Washington and Mr. Lane.

44. During the records check, Deputy Thomas was informed that Mr. Washington had an open warrant in Washington Parish.

45. The traffic stop continued for approximately fifteen minutes after Deputy Thomas patted Mr. Washington down, concluding with Mr. Washington receiving a traffic citation.

46. No medical records have been provided in this case.

## VII.   LISTING OF CONTESTED ISSUES OF FACT

---

[39] *Id*. at 0:0:48-0:02:39.  Of note, as to all points remaining in this Section VI, Plaintiff has moved to exclude post-search footage and any evidence or testimony regarding events captured in the post-search footage, in a motion that remains pending with this Court.  *See* R. Doc. 208-1.

[40] *Id*. at 0:0:48-0:02:30.

[41] *See* R. Doc. 29, ¶ 78.

1.  Whether deputies from the St. Tammany's Parish Sheriff's Office ("**STPSO**"), including Defendant Thomas, stopped Mr. Washington's vehicle for alleged failure to use his turn signal and improper lane usage.

2.  Whether Mr. Washington asked to exit the vehicle one (1) second after Gregory Lane exited the vehicle.

3.  Whether Deputy Thomas asked Mr. Washington, "any weapons on you, my man?" to which Mr. Washington responded that he was not armed that he did not "tote weapons."[42]

4.  Whether, during the stop, Mr. Washington did not inform Deputy Thomas that he did not have his consent to perform the officer safety pat down.

5.  Whether, during the stop, but after the search of Mr. Washington, Deputy Wood asked Mr. Lane, "do you mind if I pat you down real quick?"

6.  Whether, approximately three minutes after the search of Mr. Washington's person, Deputy Thomas began performing a records check on Mr. Washington and Mr. Lane.[43]

7.  Whether, approximately seven minutes after the search of Mr. Washington's person, Deputy Thomas was informed that Mr. Washington had an open warrant for a traffic-related offense in Washington Parish.[44]

8.  Whether, when Deputy Thomas informed Mr. Washington about the open warrant, Mr. Washington asked if he could return to his car to retrieve paperwork from Washington Parish confirming that the warrant was closed.[45]

---

[42] *Id*. at 0:0:48-0:02:25; *see also* R. Doc. 117-9 at 46 (Response to RFA No. 91).
[43] *See* Body Camera Footage of Alexander Thomas, at 0:05:00.
[44] *Id.* at 0:09:45-0:10:16.
[45] *Id.* at 0:10:43-0:11:52.

9.  Whether Deputy Thomas responded that Mr. Washington could not go back to his vehicle to retrieve the paperwork from Washington Parish confirming that the warrant was closed.[46]

10. Whether the traffic citation that Mr. Washington received was later dismissed.[47]

11. Whether Mr. Washington has received no healthcare treatment for his alleged claims, including for emotional distress or mental anguish.[48]

12. Whether, based on the totality of facts and circumstances, Deputy Thomas had reasonable suspicion that Mr. Washington was armed and dangerous.

13. Whether Mr. Washington freely and voluntarily consented to Deputy Thomas's search of his person.

14. Whether an objective, reasonable officer in similar circumstances would have understood Mr. Washington's actions in response to Deputy Thomas' request to perform an officer safety pat down to constitute non-verbal consent.

15. Whether an objective, reasonable officer in similar circumstances would have understood Mr. Washington's actions in response to Deputy Thomas' request to perform an officer safety pat down to constitute implied consent.

16. Whether an objective, reasonable officer in similar circumstances would have understood by the exchange between Mr. Washington and Deputy Thomas that Mr. Washington gave his valid consent to Deputy Thomas to perform the search.

17. Whether or not Mr. Washington suffered any mental and/or emotional damages.

---

[46] *Id.* at 0:13:52.
[47] *See* R. Doc. 120-11.
[48] *See* Deposition Testimony of Bruce Washington, pgs. 72 – 76.

18. Whether or not subsequent to the traffic stop, plaintiffs attempted to lodge a complaint against Deputy Thomas, as well as Deputies Jackson Bridel and Shaun Wood, who were also present at the stop with the STPSO administrative office.

## VIII.   LISTING OF CONTESTED ISSUES OF LAW

1. Whether Deputy Thomas violated the Fourth Amendment of the Constitution of the United States, which safeguards against unreasonable searches and seizures, in frisking Mr. Washington on March 13, 2021.

2. Whether it was clearly established on March 13, 2021, that Deputy Thomas's actions violated the Fourth Amendment of the Constitution of the United States.

3. Whether, based on the totality of the circumstances, Deputy Thomas had reasonable suspicion to justify the search of Mr. Washington.

4. Whether an objective, reasonable officer in similar circumstances would have understood Mr. Washington's actions in response to Deputy Thomas' request to perform an officer safety pat down to constitute non-verbal consent.

5. Whether an objective, reasonable officer in similar circumstances would have understood Mr. Washington's actions in response to Deputy Thomas' request to perform an officer safety pat down to constitute implied consent.

6. Whether an objective, reasonable officer in similar circumstances would have understood by the exchange between Mr. Washington and Deputy Thomas that Mr. Washington gave his valid consent to Deputy Thomas to perform the search.

7. Whether Deputy Thomas is entitled to Qualified Immunity.

8. Whether Deputy Thomas' actions violated a statutory or constitutional right of Mr. Washington.

9. Whether the statutory or constitutional right was clearly established at the time of Deputy Thomas' conduct.

10. Whether Mr. Washington's constitutional rights were beyond debate and so clearly established that a reasonable official in similar circumstances would have understood that Deputy Thomas' actions in performing the officer safety pat down violated Mr. Washington's constitutional rights.[49]

11. Whether Mr. Washington can establish causation for his mental and/or emotional damages.

12. Whether absent a warrant, valid and voluntary consent, or reasonable suspicion, it is unconstitutional for a law enforcement officer to conduct a weapons frisk of an individual.

## IX.    EXHIBITS

### 1.   Plaintiff's List of Exhibits to be Introduced at Trial

| Plaintiff's Exhibits | | | |
|---|---|---|---|
| No. | Description of Exhibit | Bates Label | Defendant's Objections |
| 1. | A. Thomas Bodycam Footage (3.13.2021) (produced in response to PRR pursuant to La. R.S. 44:32) | WASHLANE000137 | |
| 2. | Hwy 190 and Exxon Gas Station Google Maps View | WASHLANE003698 | Objection as to authenticity and relevancy |
| 3. | Hwy 190 and Exxon Gas Station Google Maps Satellite view | WASHLANE003699 | Objection as to authenticity and relevancy |
| 4. | Hwy 190 and Smoothie King Google Maps View | WASHLANE003700 | Objection as to authenticity and relevancy |
| 5. | Hwy 190 and Smoothie King Google Maps Satellite View | WASHLANE003701 | Objection as to authenticity and relevancy |
| 6. | Google Street View of Hollycrest Blvd. circa January 2019 | WASHLANE004638 | Objection as to authenticity and relevancy |

---

[49] Plaintiff notes its objection to this language as vague and confusing, and at odds with the Fifth Circuit Pattern Jury Instructions (Civil Cases) on Qualified Immunity, *see* 10.3. Plaintiff is prepared to brief this issue to aid in the Court's consideration of the parties' proposed jury instructions at the appropriate time.

| Plaintiff's Exhibits | | | |
|---|---|---|---|
| 7. | Google Street View of Exxon gas station form hwy 190 circa May 2022 | WASHLANE004639 | Objection as to authenticity and relevancy |
| 8. | Google Street View of Exxon gas station and Hollycrest Blvd. from Hwy 190 circa May 2022 | WASHLANE004640 | Objection as to authenticity and relevancy |
| 9. | Google Satellite View of Exxon gas station, Hollycrest Blvd., and Tropic Car Wash circa 2022 | WASHLANE004641 | Objection as to authenticity and relevancy |
| 10. | Google Street View of Exxon gas station from Hollycrest Blvd. circa January 2019 | WASHLANE004642 | Objection as to authenticity and relevancy |
| 11. | Google Street View of Exxon gas station and Hollycrest Blvd. from Exxon gas station exit to Hwy 190 circa November 2019 | WASHLANE004643 | Objection as to authenticity and relevancy |
| 12. | Disposition of Citation Issued to B. Washington on March 13, 2021 – Louisiana v. Washington Case # 3377-T-2021[50] | WASHLANE000190-94 | Objection as to relevancy and authenticity |
| 13. | STPSO SOP 2250:01.060 Stop and Frisk or Investigative Detention (produced in response to PRR pursuant to La. R.S. 44:32) | WASHLANE000274-75 | Objection as to relevancy and authenticity |
| 14. | STPSO Complete Policy and Procedures | WASHLANE000455-WASHLANE000468 | Objection as to relevancy and authenticity |

**2. Defendant's List of Exhibits to be Introduced at Trial**

| Defendant's Exhibits | | | |
|---|---|---|---|
| No. | Description of Exhibit | Bates Label | **Plaintiff's Objections** |
| 1. | CAD Report Event # 2021-042627, from the office of the St. Tammany Parish Sheriff related to the subject incident involving Bruce Washington and Gregory Lane | STPSO_WASH_36 | Objection as to relevancy with regard to events or facts about which Deputy Thomas was not aware at the time of the frisk. |

---

[50] Plaintiff objects to the admissibility of Defendant's Exhibit No. 5 below ("Traffic Citation No. 10"), but should this Court allow such document to be admitted into evidence, Plaintiff would ask for this Exhibit No. 12 to be admitted, as well.

| Defendant's Exhibits | | |
|---|---|---|
| 2. | Body Camera Footage of Alexander Thomas dated March 13, 2021 | | Objection as to relevancy with regard to all events occurring after the frisk of Mr. Washington or events or facts about which Deputy Thomas was not aware at the time of the frisk. *See* R. Doc. 208. |
| 3. | Body Camera Footage of Jackson Bridel dated March 13, 2021 | | Objection as to relevancy with regard to all events occurring after the frisk of Mr. Washington or events or facts about which Deputy Thomas was not aware at the time of the frisk. *See* R. Doc. 208. |
| 4. | Body Camera Footage of Shaun Wood dated March 13, 2021 | | Objection as to relevancy with regard to all events occurring after the frisk of Mr. Washington or events or facts about which Deputy Thomas was not aware at the time of the frisk. *See* R. Doc. 208. |
| 5. | Traffic Citation No. 10 0077003 related to the subject incident involving Bruce Washington[51] | | Objection as to relevancy |
| 6. | Bruce Washington Attachment for Washington Parish[52] | | Objection as to relevancy |

## X.    WITNESS LIST

Plaintiff Mr. Washington filed a witness list in accordance with prior court orders.  *See* R. Doc. 60.  However, in the interest of preserving judicial and party resources, Plaintiff sets out the following narrowed witness list ahead of the pretrial conference with this Court.

**Plaintiff's Witness List**

1. **Will Call**

---

[51] Defendant objects to the admissibility of Plaintiff's Exhibit No. 12 ("Disposition of Citation"), but should this Court allow such document to be admitted into evidence, Defendant would ask for this Exhibit No. 5 to be admitted, as well.
[52] See R. Doc. 125-4.

a.  Bruce Washington
    416 Sullivan Dr.
    Bogalusa, LA 70427
    *Will testify about the events giving rise to this lawsuit.*

b.  Lloyd Grafton, Expert Witness
    3896 Hwy 33
    Ruston, Louisiana 71270
    *Will testify as an expert witness about procedures and training related to assessment of officer safety, conduction of traffic stops and consent to search. The parties have exchanged expert reports in accordance with prior court orders.*

2.  **May Call**

a.  Gregory Lane[53]
    607 Wilkinson Street
    Mandeville, LA 70448
    *Will testify about the events giving rise to this lawsuit.*

b.  Alexander Thomas
    *300 Brownswitch Rd.*
    *Slidell, LA 70458*
    *Will testify about the events giving rise to this lawsuit.*

c.  Shaun Wood
    300 Brownswitch Rd.
    Slidell, LA 70458
    *Will testify about the events giving rise to this lawsuit.*

d.  Jackson Bridel
    300 Brownswitch Rd.
    Slidell, LA 70458
    *Will testify about the events giving rise to this lawsuit.*

e.  Jerry Hoskin[54]

    *Will testify about the events giving rise to this lawsuit.*

f.  Keita Lane[55]

    *Will testify about the events giving rise to this lawsuit.*

g.  Trase Gregory Lane[56]

---

[53] Defendant objects to the Testimony of Gregory Lane on the basis of relevancy.
[54] Defendant objects to the Testimony of Jerry Hoskin on the basis of relevancy.
[55] Defendant objects to the Testimony of Keita Lane on the basis of relevancy.
[56] Defendant objects to the Testimony of Trase Gregory Lane on the basis of relevancy.

*Will testify about the events giving rise to this lawsuit.*

h.  Taize Lane[57]

*Will testify about the events giving rise to this lawsuit.*

i.  A representative of the St. Tammany Parish Sheriff's Office.

j.  Any witnesses necessary for the introduction of documentary evidence.

k.  Any and all rebuttal witnesses.

l.  Any and all impeachment witnesses.

m.  Any other witnesses listed or called by Defendant.

Plaintiff's witness list was filed in accordance with prior Court orders.  (*See* R. Doc. 60.)

**Defendant's Witness List**

**1. Will Call**

1.  Bruce Washington
    416 Sullivan Dr.
    Bogalusa, LA 70427
    *Will testify about the events giving rise to this lawsuit.*

2. Alexander Thomas
    300 Brownswitch Rd.
    Slidell, LA 70458
    *Will testify as to his knowledge of and role in the subject incident involving Bruce Washington and Gregory Lane.*

3. Jackson Bridel
    300 Brownswitch Rd.
    Slidell, LA 70458
    *Will testify as to his knowledge of and role in the subject incident involving Bruce Washington and Gregory Lane.*

4. Shaun Wood
    300 Brownswitch Rd.
    Slidell, LA 70458
    *Will testify as to his knowledge of and role in the subject incident involving Bruce Washington and Gregory Lane.*

5. John Ryan

---

[57] Defendant objects to the Testimony of Taize Lane on the basis of relevancy.

700 N. Carr Rd, #595
Plainfield, IN 46168
*Will testify as an expert witness about law enforcement policies, training, operations and procedures.*

6. A representative and/or custodian of records for the St. Tammany Parish Sheriff's Office;

## 2. May Call

1.  Trace Gregory Lane[58]

2.  Taize Lane[59]

3.  Keita Shenae Jones-Lane[60]

4.  Jerry Hoskin[61]

5.  Emile J. Lubrano[62]

6.  Christopher Graham[63]

7.  David Maki[64]

8.  Crystal K. Dill[65]

9.  Jeremy Travis[66]

10. Dale Galloway[67]

11. John Evans[68]

12. Lloyd Grafton[69]

13. Any witnesses necessary for the introduction of documentary evidence.

---

[58] Defendant has filed a Motion *in Limine* to exclude this testimony, (See R. Doc. 215), however, Defendant reserves the right to call this witness to testify if not excluded.
[59] See Footnote No. 58.
[60] *Id*. at Footnote No. 58.
[61] *Id*.
[62] *Id*.
[63] *Id*.
[64] *Id*.
[65] *Id*.
[66] *Id*.
[67] *Id*.
[68] *Id*.
[69] *Id*.

14. Any and all rebuttal witnesses.

15. Any and all impeachment witnesses.

16. Any other witnesses listed or called by Plaintiff.

Defendant's witness list was filed in accordance with prior Court orders. (*See* R. Doc. 59).

## XI.    LIST OF DEPOSITION TESTIMONY TO BE OFFERED INTO EVIDENCE

By April 28, 2025, each party will submit a summary of what that party intends to prove and convey to the Court by deposition testimony, including, where appropriate, particular page and line references to said depositions. Any objections to such page-line deposition designations will be filed with the Court by May 5, 2025.

Plaintiff may offer the deposition testimony of Alexander Thomas, Shaun Wood, Jackson Bridel, the STPSO Rule 30(b)(6) designee, and the expert testimony of John "Jack" Ryan. Plaintiff's deposition testimony will be offered in accordance with the Federal Rules of Evidence.

Defendant objects to any deposition testimony being offered for any reason other than as permitted by the Federal Rules of Evidence. Defendant additionally objects to the deposition testimony of Dale Galloway, Jeremy Travis, Christopher Graham, John Evans and Emile Lubrano, as the testimony of these individuals is centered on Plaintiffs previously dismissed First Amendment Claims, and is therefore irrelevant to Plaintiff, Bruce Washington's, claim of an alleged unlawful search.[70]

Defendant does not anticipate utilizing any deposition of any witness unless offered for reasons permitted under the Federal Rules of Evidence, including but not limited to, for rebuttal and impeachment.

## XII.    DEMONSTRATIVE AIDS

---

[70] Plaintiff intends to offer evidence which is admissible under the Federal Rules of Evidence, and do not agree that deposition testimony being "centered" on a dismissed claim indicates that all testimony from such deposition is necessarily irrelevant.

**Plaintiff:**

1. Video and stills taken from the body camera of Alexander Thomas, dated March 13, 2021.[71]

2. Visual aids such as maps, presentations, slides, videos, charts, models, diagrams and other similar objects to assist the jury in understanding the facts. These aids are not intended to be offered into evidence.

3. A copy of the jury instructions.

**Defendant:**

1. Video and stills taken from the body camera of Alexander Thomas, dated March 13, 2021

2. The body camera footage of Alexander Thomas, Shaun Wood and Jackson Bridel dated March 13, 2021.

3. Defendant may use a power-point presentations, slides, photographs, slides, charts, models, schematic diagrams and other similar objects, which, although not offered as evidence, may be used in opening statement or closing argument, as well as in displaying, summarizing or recounting the information contained in exhibits.

## XIII. PROPOSED JURY INSTRUCTIONS

This matter is designated as a jury trial. Proposed jury instructions, special jury interrogatories, and any special questions that the parties seek to ask prospective jurors on *voir dire* shall be electronically filed with the Court not later than five (5) working days prior to the trial date.

## XIV. TRIAL

The trial shall commence on Monday, May 12, 2025, at 9:00 AM. The trial is estimated to last approximately five days. R. Doc. 199.

## XV. LIABILITY

---

[71] Defendant objects to any still photos of the body camera video from Alexander Thomas, Shaun Wood and Jackson Bridel.

The issue of liability (will or will not) be tried separately from that of quantum.

## XVI.   SETTLEMENT

Possibility of settlement of this case was considered.  A settlement agreement has not been reached at this time; however, the parties are open to settlement.

## XVII.  PRETRIAL STATEMENT

This pre-trial order has been formulated after conference at which counsel for the respective parties have engaged in a telephone conference.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

## XVIII. SIGNATURES

_____
Brandon S. Long
United States District Judge


By: /s/ Elizabeth M. Raulston
Elizabeth M. Raulston
Bar No. 5255138 (New York)
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-903-9274
elizabeth.raulston@linklaters.com

Charles Andrew Perry
Bar No. 40906
Nora Ahmed (pro hac vice)
Bar No. 5092374 (New York)
ACLU FOUNDATION OF LOUISIANA
1340 Poydras St, Ste 2160
New Orleans, LA 70112
aperry@laaclu.org
nahmed@laaclu.org

By: _____
Andrew R. Capitelli

Andrew R. Capitelli         (No. 31649)
Kenneth R. Whittle          (No. 38640)
Sarah A. Fisher             (No. 39881)
Paige S. Stein              (No. 40954)
MILLING BENSON WOODWARD L.L.P
68031 Capital Trace Row
Mandeville, LA 70471
Telephone:      (985) 292-2000
Facsimile:      (985) 292-2001
Email:          acapitelli@millinglaw.com
                kwhittle@millinglaw.com
                sfisher@millinglaw.com
                pstein@millinglaw.com

## CERTIFICATE

I hereby certify that on April 16, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel named below by operation of the court's electronic filing system. I also certify that I have provided this Honorable Court with two copies of the foregoing on April 16, 2025.

<u>/s/ Elizabeth M. Raulston</u>
Elizabeth M. Raulston (pro hac vice)
Bar No. 5255138 (New York)
Linklaters LLP
1290 Avenue of the Americas
New York, NY, 10104
Tel: 212-903-9274
elizabeth.raulston@linklaters.com

*Counsel for Plaintiff Bruce Washington*